UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH CALDWELL, individually and
as Personal Representative of the                    Case No. 2:09-cv-13828
ESTATE OF ROBERT PATRICK
CALDWELL, deceased,                                  HONORABLE STEPHEN J. MURPHY, III

       Plaintiff,

v.

CHEAPCARIBBEAN.COM, INC., et al.,

       Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION OR FOR IMPROPER VENUE
## AND DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE

This is a wrongful death lawsuit arising from a car accident involving Elizabeth

Caldwell and Robert Patrick Caldwell during a honeymoon trip to Mexico in October 2007,

which car accident resulted in the death of Robert Patrick Caldwell. The Caldwells booked

the trip by calling a toll-free number provided at www.cheapcaribbean.com, a website

operated by defendant CheapCaribbean.com, Inc. ("CheapCaribbean"). Elizabeth Caldwell

has brought the present suit as an individual and as personal representative of her late

husband. Defendants CheapCaribbean, Inter Island Tours, Ltd. ("Inter Island") and COMM

Group, Inc. ("COMM Group") now move to dismiss plaintiff's complaint on the grounds of

lack of personal jurisdiction and improper venue. There is also pending an ex parte motion

by the plaintiff for an order of the Court extending the summons to two other defendants

that have not yet been served, and to permit alternate service by effecting service on the

defendants' attorney in another action pending in New Jersey.

For the reasons stated below, the Court finds that personal jurisdiction exists over the defendants, and will deny defendants' motion to dismiss. The Court will also deny the motion to dismiss for improper venue because the forum selection clause that defendants rely on is not a part of the contract between the parties. Finally, the Court will deny plaintiff's ex parte motion for alternate service because the plaintiff has not established that alternate service is permissible under Michigan law and the plaintiff has provided the Court with no authority for her proposed method of alternative service.

## FACTS

This action arises out of a motor vehicle accident that occurred on October 1, 2007 in Cancun, Mexico. Robert Patrick and Elizabeth Caldwell and Billy and Jean Hunt were being transported from the Cancun, Mexico airport to their hotel rooms in Cancun when a car collision took the lives of Robert Caldwell and the Hunts, and left Elizabeth Caldwell with serious personal injuries. All four had purchased vacation packages from CheapCaribbean, which included the transportation from the airport to the hotel.

Elizabeth Caldwell had made the arrangements for herself and Robert Patrick Caldwell, who was her fiancé at the time the reservations were made. The Caldwells found the CheapCaribbean.com website through a search engine and over the course of several days viewed travel and hotel accommodation offered on the website. Elizabeth Caldwell concluded the transaction by calling the toll free number posted at http://www.cheapcaribbean.com. In that telephone call, Caldwell selected from the dates, hotel and other options offered by the defendant and concluded by reading her credit card number to the agent to pay for the vacation package.[1]

---

[1] The Hunts were residents of Texas and placed their order for their vacation package through the www.cheapcaribbean.com website. Heirs to the Hunts filed suit in Texas; defendant CheapCaribbean removed the suit to federal court and then moved to dismiss

Defendants CheapCaribbean, Inter Island and COMM Group are affiliated companies involved in the online travel industry. CheapCaribbean and Inter Island are both owned by the COMM Group. Paine Decl., Ex. A, ¶ 2. COMM Group and Cheap Caribbean are both Delaware corporations with their principal place of business in Bucks County, Pennsylvania. *Id.* Inter Island is a New York corporation with its principal place of business in Bucks County, Pennsylvania. *Id.*

CheapCaribbean and Inter Island are online travel businesses. Paine Decl. ¶ 3. Inter Island maintains contracts with third party vendors that allow it to access travel products such as flights and hotels at discounted prices. *Id.* CheapCaribbean compiles those third-party travel products to form travel packages that it makes available through its website, www.cheapcaribbean.com. The website is hosted in Pennsylvania and all transactions occurring on the website take place in Pennsylvania. *Id.* The travel packages are primarily purchased by customers located in the Northeast United States. *Id.*

On July 4, 2007, the Caldwells booked a travel package to Mexico from CheapCaribbean. The Caldwells' travel package was a conglomeration of third party travel products, including round trip airfare, hotel accommodation and ground transfers. Paine Decl. ¶ 4. The Caldwells initiated contact with CheapCaribbean by accessing www.cheapcaribbean.com and then phoning the toll-free number found on the website. The website automatically generated an email containing the Caldwell's travel voucher documents and other information about their travel package, which email was sent to the email address provided by the Caldwells over the phone when they purchased their package.

_____

on the same grounds as defendants assert here. The Texas district court denied the motion. The Texas lawsuit has since settled..

On the date the Caldwells booked their travel package, the www.cheapcaribbean.com website listed a hyperlink at the bottom of each page, to the website's terms of use, which hyperlink was labeled "Terms of Use." Paine Decl. ¶ 6. Among the terms of use were the following paragraphs:

AGREEMENT BETWEEN CUSTOMERS AND CHEAPCARIBBEAN.COM, INC

This Web site is offered to you, the customer, conditioned on your acceptance, without modification of the terms, conditions, and notices contained herein. Your use of this Web site constitutes your agreement to all such terms, conditions, and notices.
....

This agreement is governed by the laws of the State of Pennsylvania, USA. You hereby consent to the exclusive jurisdiction and venue of courts in Bucks County, Pennsylvania, USA, in all disputes arising out of or relating to the use of his Web site. Use of this Web site is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and conditions, including, without limitation, this paragraph.

Paine Decl., ¶ 6 and Exh. A-1, pp. 1, 4.

The travel voucher emailed to Elizabeth Caldwell stated at the bottom that "[a]ll CheapCaribbean.com reservations are non-refundable, non-cancellable, and non-changeable as per our terms and conditions which can be viewed at: www.CheapCaribbean.com/terms.jsp."

The travel package purchased by the Caldwells included round-trip airport transportation to and from Cancun International Airport. The round trip transportation was provided by defendant Global Incentive Management, a third party vendor that was not owned or controlled by CheapCaribbean or its related companies. Paine Decl. ¶ 7.[2]

---

[2]Global Incentive Management is referred to as an "assumed name" of defendant Armando Roy Ortiz. Neither Global Incentive Management nor Ortiz have been served in this action, and the plaintiff has filed an ex parte motion for service to Ortiz and Global Incentive Management by serving the attorney who represents him in an action pending in the United States District Court for the District of New Jersey.

Neither Inter Island, CheapCaribbean nor COMM Group have ever owned or leased any real or personal property in Michigan.  None of the companies have ever paid taxes to any taxing authority in Michigan.  None of the defendants have had any employees, representatives, agents, officers, shareholders or independent contractors located in Michigan.  They do not have offices, telephone numbers, mailing addresses or post office boxes in Michigan.  They do not maintain any business records or files in Michigan.  They have never been qualified, authorized or licensed to do business in Michigan and do not have registered agents in Michigan.  None of these defendants have directly targeted or advertised any products or services to Michigan residents.  Paine Decl. ¶¶ 8 - 10.

There are no individuals or documents located in Michigan that are directly under the care, custody or control of CheapCaribbean, Inter Island or COMM Group's care, custody or control that relate to the Caldwells' claims.  All CheapCaribbean, Inter Island and COMM Group employees with knowledge of the substance and operation of www.CheapCaribbean.com, the travel package booked by the Caldwells and the contracts between Inter Island and its third party vendors are located in Pennsylvania.  Paine Decl. ¶ 12.

## ANALYSIS

Defendants move to dismiss the plaintiff's complaint on two grounds.  First, the defendants argue that this Court lacks personal jurisdiction over CheapCaribbean and its related companies, and therefore the suit should be dismissed.  Second, defendants argue that this action should be dismissed for improper venue.  For the reasons stated below, the Court finds that it has personal jurisdiction over the defendants and will deny the defendants' motion to dismiss for lack of personal jurisdiction.  The Court will also deny the defendants' motion to dismiss on venue grounds because the forum selection clause

defendants rely on was not a part of the contract between the Caldwells and CheapCaribbean.

Finally, the Court will deny plaintiff's motion for alternate service because the plaintiff has not met her burden of showing that alternate service is permissible and because the plaintiff has not shown that forced service on an attorney representing a party in another matter in another jurisdiction is an appropriate method of alternative service.

I.    Motion to Dismiss for Lack of Personal Jurisdiction

Defendants CheapCaribbean, Inter Island and COMM Group move to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

The exercise of personal jurisdiction over a defendant must be "both (1) authorized by the law of the state in which [the court] sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).  There is a two-prong test for determining if the exercise of personal jurisdiction is consistent with the Fourteenth Amendment Due Process clause. First, the non-resident must have minimum contacts with the forum state, and, second, subjecting the non-resident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The plaintiff bears the burden of establishing personal jurisdiction.  *Neogen*, 282 F.3d at 887. Defendants argue that the plaintiff cannot meet her burden of establishing that the CheapCaribbean defendants have sufficient minimum contacts with the state of Michigan to justify this Court exercising personal jurisdiction over those defendants, and that the exercise of jurisdiction would be inconsistent with notions of fair play and justice.

The Court held a hearing on defendants' motion to dismiss, but did not hold an evidentiary hearing. The plaintiff, therefore, "need only make a prima facie showing of jurisdiction." *Id.* (quoting *CompuServ, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). The plaintiff may meet her burden by establishing sufficient contacts between the defendants and the forum state to support jurisdiction. *Id.* The Court may not consider facts offered by the defendant that conflict with those submitted by the plaintiff, and must construe the facts in the light most favorable to the plaintiff. *Id.* In the face of a properly supported motion to dismiss, however, the plaintiff cannot simply rest on its pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

A. Authorized by Statute

Jurisdiction is authorized over non-resident defendants by the Michigan long-arm statutes. General jurisdiction is authorized by Mich. Comp. Laws § 600.711, while specific jurisdiction is authorized by Mich. Comp. Laws § 600.715. Defendants argue that the plaintiff cannot establish personal jurisdiction under either general or limited jurisdiction and therefore this action should be dismissed as to the moving defendants.

1. General jurisdiction

Defendants argue that plaintiff cannot meet her burden of establishing that the defendants are subject to general jurisdiction. Mich. Comp. Laws § 600.711. That statute subjects a foreign corporation to the jurisdiction of the courts of this state where it "carry[s] on . . . a continuous and systematic part of its general business within the state." Id. "A foreign corporation must actually be present within the forum state on a regular basis, either personally or through an independent agent, in order to be subjected to general personal jurisdiction." *Kircos v. Lola Cars Ltd.*, 97 Mich. App. 379, 386 (1980) (citation

omitted).  Defendants argue that they have not conducted a continuous and systematic part of their general business in the state: they are not incorporated in the state; they own no real or personal property in the state; they do not pay Michigan taxes; they have no employees, representatives, agents, officers, shareholders or independent contractors located in the state; they have never had an office, telephone number, mailing address or post office box in Michigan; they are not authorized to do business in the state, and they have never specifically targeted or advertised products in the state.

Plaintiff argues that general personal jurisdiction is present over the defendants based upon the www.CheapCaribbean.com website.  In support they cite *Mieczkowski v. Masco Corp.*, 997 F. Supp. 782, 788 (E.D. Tex. 1998), where the district court held that a website plus a few sales transactions in Texas was enough to establish general jurisdiction over the foreign corporation.  Plaintiff cites no Michigan or Sixth Circuit precedent.  Plaintiff argues that general jurisdiction exists over the defendants here because the defendants have continuously maintained a website reaching Michigan citizens and conducted traditional business transactions with Michigan citizens over a period of at least four years.

The Court agrees with the defendants that *Mieczkowski*, in addition to its lack of controlling authority, is readily distinguishable, because the defendant in that case had multiple contacts in Texas in addition to its website, including sales of $5.7 million worth of product shipments into Texas, direct mailings into Texas, and product purchases in Texas.  *Mieczkowski*, 997 F. Supp. at 785.  Other courts have declined to apply the case to find general jurisdiction.  See, *e.g., J-L Chieftan, Inc. v. Western Skyways, Inc.,* 351 F. Supp. 2d 587, 594-97 (E.D. Tex. 2004) (distinguishing *Mieczkowski* and declining to find general jurisdiction based on a website and other sporadic contacts); *Estate of Bank v. Swiss Valley*

*Farms Co.*, 286 F. Supp. 2d 514, 519-20 (D. Md. 2003) (distinguishing *Mieczkowski* and declining to find general jurisdiction based solely upon website).

General personal jurisdiction is only proper where "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even it the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989). There is no evidence that the defendants maintain the kind of continuous and systematic contacts with the state of Michigan that would permit them to be subject to suit for any claim, even one unrelated to the defendants' contacts with this state. The plaintiff has failed to show the Court a case in which a defendant has been found to be subject to general personal jurisdiction based upon a website, without substantial other contacts with the state. *Cf. Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (allegations that defendant had website accessible to anyone over the internet insufficient to justify general jurisdiction). The Court therefore finds that the plaintiff has failed to establish that the defendants are subject to general jurisdiction in this Court.

2. <u>Limited Personal Jurisdiction</u>

The defendants also argue that they are not subject to limited personal jurisdiction in Michigan. Michigan permits the exercise of limited jurisdiction over foreign corporations where the claims in the lawsuit arise out of the transaction of any business with the state. Mich. Comp. L. § 600.715(1). The exercise of limited personal jurisdiction comports with due process if it meets the three-part test established by the Sixth Circuit in *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or

consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (6th Cir. 2002) (quoting *Mohasco*, 401 F.2d at 381).

### 1. Purposeful Availment

The first element of the *Mohasco* test is that the defendant has purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. A corporate parent is not subject to personal jurisdiction due to the acts of its subsidiaries unless it makes some "overt act." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) ("a company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction"). Based upon this authority, defendants argue that limited jurisdiction is not available over Inter Island or the COMM Group. The COMM Group has no contacts at all with Michigan, and, defendants argue, the mere fact that its subsidiary CheapCaribbean operates a website that is accessible in Michigan is insufficient to establish personal jurisdiction over the COMM Group because a parent cannot be subject to personal jurisdiction for its subsidiary absent some overt act. As to Inter Island, defendants argue that Inter Island simply maintains contracts with third party vendors that allow CheapCaribbean to compile various products into travel packages made available on www.CheapCaribbean.com. Inter Island does not own, operate or maintain www.CheapCaribbean.com and did not engage in any transaction with the plaintiff. Further, Inter Island did not supply the contract for transportation services with Global Incentive Management with regard to the Caldwells' booking. Thus, defendants argue, there is no basis for asserting limited personal jurisdiction over either the COMM Group or Inter Island.

In response, the plaintiff alleges that the three companies are sufficiently interrelated to be treated as a single entity by the Court. In support of this assertion, plaintiff has

supplied a Certificate of Insurance that covers all three companies and consolidated financial statements for the three companies. Given the slight burden placed on the plaintiff at this stage of the proceedings, the Court finds that plaintiff has met its burden of creating a factual issue as to whether Inter Island Tours, Inc. and Comm Group, Inc. should be treated as a single entity with CheapCaribbean. The question then arises whether personal jurisdiction is available over CheapCaribbean.

As to CheapCaribbean, the existence of the interactive website may be sufficient to establish that CheapCaribbean purposefully availed itself of the privilege of doing business in the state of Michigan. The Sixth Circuit follows the *Zippo* "sliding scale" of interactivity to identify Internet activity that constitutes purposeful availment. See *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Under the *Zippo* sliding scale, personal jurisdiction is clearly proper where a defendant enters into contracts with residents of a foreign jurisdiction that involves the knowing and repeated transmission of computer files over the Internet. *Zippo*, 952 F. Supp. at 1124 (citing *CompuServ*, 89 F.3d at 1257). A passive website that merely makes information accessible to users in foreign jurisdictions is not grounds for exercising personal jurisdiction. *Id.* In the middle are interactive websites where the user can exchange information with the host computer. *Id.* "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of information that occurs on the Web site." *Id.* Under this framework, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890.

Applying the *Zippo* standard as adopted by the Sixth Circuit in *Neogen*, this Court finds that the CheapCaribbean website is sufficiently interactive to constitute purposeful availment in this state. This case is similar in many respects to *Zippo* itself. *Zippo* dealt with the question of whether personal jurisdiction existed in Pennsylvania over an online company located in California that sold "memberships" granting access to online newsgroups. The defendant's advertisements in Pennsylvania consisted of the defendant's posting information about its service on its Web page, which was accessible to Pennsylvania residents via the Internet. *Zippo*, 952 F. Supp. at 1121. Approximately two percent, or 3000, of the defendant's 140,000 paying subscribers were Pennsylvania residents. *Id.* These residents had subscribed to defendant's service by visiting the defendant's web site and filling out the application. *Id.* In addition, the defendant had entered into agreements with seven Internet service providers to grant access to the defendant's news service. *Id.* The *Zippo* court evaluated these contacts with Pennsylvania and held that personal jurisdiction was available over the defendant. The court in *Zippo* also rejected the idea that defendant's contacts with the Pennsylvania residents were "fortuitous" within the meaning of *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Rather, the court held that because the defendant had repeatedly and consciously chose to process the applications of Pennsylvania residents and to assign them passwords, the result of which the defendant knew would be the transmission of electronic messages, the defendant made a conscious choice to conduct business with the residents of that state. *Id.* at 1126.

The contacts between CheapCaribbean and Michigan are of a similar nature to those at issue in *Zippo*. The CheapCaribbean.com website is of a commercial nature and offers a high degree of interactivity. There is evidence before the Court that during the time frame

from January, 2006 to November 2009, up to 1% CheapCaribbean's total number of bookings were made by Michigan residents. While this constitutes only a small portion of CheapCaribbean's overall business, these repeated commercial contacts with Michigan residents over a number of years constituted a conscious choice by CheapCaribbean to conduct business with the residents of the state of Michigan.

Defendants cite *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 821 (E.D. Mich. 2006) (Rosen, J.) for the proposition that a plaintiff need show something more than simple interactivity in order to establish personal jurisdiction based on a website. Defendants argue that Sixth Circuit cases finding personal jurisdiction based upon a website seem to require contacts beyond the website itself. See *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (finding personal jurisdiction based on interactive website and entering into approximately 4,500 separate contracts with Ohio residents)*; Dedvukaj*, 447 F. Supp. 2d at 821 (noting that an interactive auction website "constitute[s] more than a passive website containing only posted information, and will support a finding of purposeful availment, but [is] probably insufficient to create purposeful availment alone, and finding personal jurisdiction based upon an interactive website, multiple emails and telephone calls with a Michigan resident encouraging the purchase of products and confirming shipping charges to Michigan). The defendants here have submitted an uncontroverted affidavit showing that Michigan residents account for no more than 1% of the total number of bookings through www.CheapCaribbean.com over the past three years. The number of contacts, however, is not dispositive. Rather, the focus is on the "nature and quality" of the contacts with the forum. International Shoe, 326 U.S. at 320.

Defendants argue that CheapCaribbean's contacts with Michigan do not concern the sale of goods that could be shipped into Michigan, but only constitutes a system that allows

users to reserve third party travel services through a single package. Defendants cite *Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F. Supp. 2d 1082 (E.D. Mo. 2001), which held that internet websites that purvey hotel services anticipate that the party purchasing the service has to leave his home state to use the service. Defendants also point out that the plaintiff did not use the interactivity features of the website but rather booked the trip through a toll-free number that she found on the website. Based on these facts, the defendants argue that the www.CheapCaribbean.com website functioned in this case as nothing more than a passive provider of information.

*Bell* is distinguishable on two grounds. First, in *Bell,* there was no evidence of anyone from the forum state using the interactive website to book reservations. *See id.* at 1088. In the present case, on the other hand, the defendants admit that up to 1% of the bookings on CheapCaribbean.com were made by Michigan residents. Second, the plaintiffs in *Bell* did not claim to have visited the website prior to making their hotel reservations, and the court therefore found no connection between the plaintiff's claims and the website, which was the defendant's sole contact with the forum. *Id.* Here, the plaintiff consulted with the website numerous times before making her final purchase over the telephone. *Bell* therefore is not persuasive under the facts at issue in this litigation.

The Court finds that the interactive website is sufficient to establish personal jurisdiction over the defendants, even though the Caldwells did not use the interactive features of the website and therefore, as to them, the website functioned as a passive website providing information. The Sixth Circuit has not found personal jurisdiction appropriate based solely on a non-interactive website without additional contacts, but here the web site, like that in *Zippo*, is interactive. Plaintiff's decision not to use the website's interactivity features to book her vacation does not undercut a finding that the existence of

the interactivity features is sufficient to constitute purposeful availment in Michigan. *Cf. Neogen,* 282 F.3d at 891-92 (concluding that personal jurisdiction appropriate in trademark suit by competitor based on other customers' interactions with web site and company and approximately 14 transactions with Michigan residents in any given year).

2. Arise from the activities in the state

In order to comply with the Michigan long arm statute, the cause of action has to arise from the transaction of any business in the state of Michigan. This element has been met by the plaintiff because the transaction of "any" business encompasses even the slightest transaction of business in the state, *Lanier v. Am. Board of Endontics*, 843 F.2d 901, 905-06 (6th Cir. 1988), and the Caldwells would not have sustained their injuries but for the contract they made with CheapCaribbean to travel to Mexico. *Cf. Theunissen v. Matthews*, 935 F.2d 1454, 1464 (6th Cir. 1991) (limited jurisdiction appropriate where plaintiff sustained injuries in Canada that would not have occurred but for his assignment to ship freight from Canada to Michigan on his employer's behalf). Viewing these facts in the light most favorable to the plaintiff, the Court holds that the plaintiff has established a prima facie case for personal jurisdiction under Mich. Comp. Laws 600.715(1).

B. Would exercising personal jurisdiction over defendants in Michigan offend traditional notions of fair play and substantial justice?

Defendants argue that even if minimum contacts exist over the defendants, personal jurisdiction would not comport with "traditional notions of fair play and substantial justice" as required by *International Shoe*, 326 U.S. at 316. There is an inference of reasonableness when purposeful availment and a cause of action arising from the contacts are found. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Several other factors must also be considered, including (1) the burden on the defendant, (2) the

interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) the interest of other states in securing the most efficient resolution of controversies. *Id.*

Defendants argue that they would face a substantial burden if forced to litigate this action in Michigan, while litigating the action in another forum would actually provide the plaintiff with more convenient and effective relief. Most relevant evidence, records and witnesses are located outside of Michigan, at defendants principal place of business in Pennsylvania. Further, defendants argue that certain co-defendants and third parties necessary to provide complete relief, such as the Global Incentive entities, which were the ones actually responsible for the transportation and would only be subject to jurisdiction in Pennsylvania, based on negotiations and agreements with defendants. Finally, defendants argue that Michigan has little interest in adjudicating this dispute because the accident occurred in Mexico, the plaintiff's injuries occurred in Mexico, and plaintiff's claims will likely be governed by Pennsylvania law due to the Pennsylvania choice of law provision contained in the terms of use.

The Court finds that the defendants have failed to rebut the presumption of reasonableness. There are no facts before the Court on whether the Court has jurisdiction over the Global Incentive defendants. While facts may develop that show that jurisdiction is lacking over them, the Court cannot dismiss the suit based on the defendants' speculation that they will not be subject to personal jurisdiction in this Court. Defendants' other arguments are not persuasive. The defendants have purposefully availed themselves of doing business in Michigan and it would not violate due process to permit the plaintiff to retain her choice of forum.

II.   Should This Action Be Dismissed Based on the Forum
      Selection Clause on the www.CheapCaribbean.com website?

Defendants also move to dismiss based on the forum selection clause on the website. Generally, a transfer of venue under 28 U.S.C. § 1404(a) is preferable. *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 539 (6th Cir. 2002). Defendants argue, however, that the forum selection clause at issue requires litigation in Bucks County, Pennsylvania, and there is no federal court in Bucks County, Pennsylvania, and therefore transfer of venue is not possible, and so the defendants move to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants assert that forum selection clauses are presumed valid and enforcing the forum selection clause is not unreasonable, and therefore should be enforced.

The plaintiff argues persuasively that the choice of law and forum selection clauses from CheapCaribbean's website are not binding on the plaintiff because she made the reservations on the telephone, not on www.CheapCaribbean.com, and because she was never notified that the defendants expected to apply the website terms of use to the telephone transaction. Thus, plaintiff argues, it is unconscionable to suggest that the she intended to be bound. The plaintiff points out that there is no evidence that she followed the terms of use link on the website or read any portion of it, and in fact she did not read it. The terms of use link is a small link on the bottom of the website, while the "1-800" number is prominently featured on the top of the page. Only customers that book through the website itself are forced to view the terms of use and agree to their application.

At the motion hearing, counsel for the defense raised the issue of whether the plaintiff could successfully argue that CheapCaribbean had sufficient minimum contacts with Michigan to establish personal jurisdiction, *and* that the forum selection clause was inapplicable. Mot. Hr'g Trans., May 18, 2010, at 14–17. This argument presents an

interesting, and thoughtful, dichotomy. The facts pled in this case show that the plaintiff used the interactive features of this website to plan their trip, and then used an alternative method of booking the trip that was offered by ClearCaribbean. While defense counsel is correct that the level of usage was below a "full" level of usage, the Court must conclude that it was still enough to establish minimum contacts with the forum. At the same time, because plaintiff took up ClearCaribbean's offer to book the trip over the phone, the plaintiff was not properly apprised of the forum selection clause. Had the plaintiff fully booked the travel on a website which failed to properly obtain consent to a forum selection clause, personal jurisdiction in the plaintiff's state would certainly be proper, and there appears to be little difference, as far as either the personal jurisdiction or the forum selection questions are concerned, between that method and the one used by the plaintiff in this case. While the Court respects the argument and fully understands that the posture of this case is unusual in a commercial climate when complete online transactions are *de rigeur*, the Court ultimately finds the plaintiff's argument against ClearCaribbean's attempt to frame the case as a "catch 22" to be persuasive.

The Court agrees with the plaintiff that the forum selection and choice of law provisions contained in the terms of use in the website are not binding on them. She did not use the website to make their reservations and did not see the forum selection clause or were notified of its application until their non-refundable tickets arrived in the mail. Defendants' motion to dismiss for improper venue will therefore be denied.

III. Plaintiffs' Ex Parte Motion For Alternate Service

The plaintiff has also filed an ex parte motion for alternate service on defendants Armando Roy Ortiz and his business operated under an assumed name Global Incentive Management. Plaintiff submits that she attempted to serve Ortiz by registered mail, return

receipt requested, and the post office attempted to serve Ortiz three times but didn't succeed. Plaintiffs assert that Ortiz is a defendant in *Hunt v. Global Incentive & Meeting Management*, 09-cv-04921, pending in the United States District Court for the District of New Jersey, and is represented by counsel there. Plaintiffs seek an order permitting service on Ortiz by effecting service on his attorney in the New Jersey action.

Plaintiffs' motion for alternate service will be denied. Under Michigan law, alternate service is only permissible when the plaintiff can show that it cannot effect service by other means permitted by Michigan law, and all plaintiff has done so far is attempted service by certified mail. In addition, the plaintiffs' requested order appears to be an overreach. Plaintiffs offer no authority for granting alternate service on an attorney representing the defendant in another matter in another jurisdiction, and the plaintiffs cite no authority for such an order. Plaintiffs' motion for alternate service will therefore be denied.

**WHEREFORE**, it is hereby **ORDERED** that defendants' motion to dismiss (docket no. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for alternate service (docket no. 23) is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 8, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 8, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager